**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **MELISSA N. RAYBORN** | § | **PLAINTIFF** |
| | § | |
| | § | |
| **v.** | § | **Civil No. 1:23-cv-120-HSO-BWR** |
| | § | |
| | § | |
| **JACKSON COUNTY SCHOOL** | § | |
| **DISTRICT, et al.** | § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION [9] TO REMAND**

BEFORE THE COURT is the Motion [9] to Remand filed by Melissa N.

Rayborn.   Having considered the record and relevant legal authority, the Court

finds that Defendants Jackson County School District and John D. Strycker have

not carried their burden of demonstrating that subject-matter jurisdiction exists.

Plaintiff Melissa N. Rayborn's Motion [9] should be granted, and this case should be

remanded to the County Court of Jackson County, Mississippi, for lack of subject-

matter jurisdiction.

## I.  BACKGROUND

A.    Factual background

According to the Complaint [1-1], Plaintiff Melissa N. Rayborn ("Plaintiff" or

"Rayborn") is a Mississippi citizen who was employed by Defendant Jackson

County, Mississippi, School District (the "District") as the executive secretary for its

Superintendent, Defendant John D. Strycker ("Strycker"), who is also a Mississippi

citizen.  R. [1-1] at 8.   Rayborn alleges that when the District hired Strycker, it was aware that he had a plan to replace older employees with younger ones; that the District "allowed Strycker to set up a hostile and discriminatory environment toward older women and their religious beliefs and allowed Strycker to slander, defame, and degrade them"; that Strycker retaliated against Rayborn after she complained of his discriminatory conduct; that Strycker created a hostile work environment concerning her faith; and that Strycker required Rayborn "to work many nights and weekends without pay."  *Id.* at 11-16.

Rayborn contends that she "suffered Strycker's Board-sanctioned reign of terror from January 2020 until July 2, 2021, when she was forced to resign (constructively discharged) . . . ."  *Id.* at 17.   Rayborn states that she lacked about six weeks from being fully vested in the Public Employee Retirement System (PERS) of Mississippi when she was constructively discharged, which caused her to lose benefits.  *Id.*

B.   Procedural history

On December 19, 2022, Rayborn filed a Complaint in the County Court of Jackson County, Mississippi, against Defendants "Jackson County School District (Jackson County School Board)" and Strycker, in his individual and official capacities, as well as Unknown Entities 1-10 and John Does 1-10.  R. [1-1] at 7. The Complaint raises claims under Mississippi law for: (1) employment discrimination in state service based on religion, sex, and age in violation of Mississippi Code § 25-9-149 and the Mississippi Constitution; (2) constructive

discharge; (3) violation of the right to free speech and the duty not to retaliate under the Mississippi Constitution; (4) civil conspiracy; and (5) negligent infliction of emotional distress.  *Id.* at 23-30.

The District and Strycker ("Defendants") removed the case to this Court, arguing that "this civil action is one in which this U.S. District Court has original federal jurisdiction pursuant to 28 U.S.C. § 1331 and § 1441."[1]  Notice [1] at 2. Although Rayborn asserts nominally state-law claims, Defendants argue they implicate significant federal issues that are deemed to arise under federal law.  *Id.* at 3 (citing *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

Rayborn has filed a Motion [9] to Remand on grounds that the Complaint "simply does *not* raise a federal question."  Mot. [9] at 1 (emphasis in original).  She insists that she avoided federal jurisdiction by relying exclusively on state law and that Defendants have not carried their burden of showing subject-matter jurisdiction exists.  *See* Mem. [10] at 1-6.

Defendants respond that Rayborn has three separate, but closely-related, lawsuits pending against them in federal court which rest on essentially the same underlying factual allegations.   Mem. [12] at 1-2.   Defendants posit that the Court possesses original federal question jurisdiction because Rayborn's state-law free speech claim "necessarily depends on resolution of a substantial question of federal law."  *Id.* at 5 (quoting *Singh v. Duane Morris LLP*, 538 F.3d 334, 337-38 (5th Cir.

---

[1]  There is clearly no diversity jurisdiction because both Rayborn and Strycker are Mississippi citizens.  R. [1-1] at 8-9; *see* 28 U.S.C. § 1332(a).

2008)).   Although Defendants acknowledge that Rayborn has pled her free speech claim under state law, they argue that "Mississippi caselaw clearly establishes that alleged violations of the provisions of Article 3, § 13 of the Mississippi Constitution are controlled by the same requirements that exist under the U.S. Constitution's First Amendment." *Id.* at 6.   Thus, "Rayborn's right to relief under Article 3, § 13 of the Mississippi Constitution necessarily depends on substantial questions of federal law that must be resolved by applying rules and standards based on First Amendment legal principles." *Id.*

Turning to Rayborn's employment discrimination claims, Defendants assert that these "likewise turn on a construction of federal law, specifically, the substantial federal issues that exist under Title VII[, 42 U.S.C. § 2000e, *et seq.*,] and the [Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ('ADEA'),] and are the very discrimination issues in dispute" in another action pending in this Court.  *Id.* at 8.   Defendants maintain that Mississippi Code § 25-9-149 is inapplicable, but that in Mississippi appellate decisions applying Section 25-9-149, "all of the substantive caselaw that is cited . . . comes from Title VII and ADEA cases."  *Id.* at 8-9 (collecting cases).

## II.  DISCUSSION

A.   Relevant legal authority

Any civil action over which district courts have original jurisdiction may be removed to federal court.  *See* 28 U.S.C. § 1441(a).  A court must presume a suit lies outside out of that jurisdiction, and the burden of establishing federal jurisdiction

rests on the removing party.  *Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

District courts have original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. § 1331. "[R]emoval based on federal question is strictly construed against removal, with doubts resolved in favor of remand in recognition of the interests of comity with state court jurisdiction," and "[t]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction."  *Port of Corpus Christi Auth. of Nueces Cnty., Tex. v. Port of Corpus Christi L.P.*, 57 F.4th 432, 438 (5th Cir. 2023) (quotations omitted).

"[A] plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist."  *Id.* (quotation omitted).  Under the well-pleaded complaint rule, "a federal court does not have federal question jurisdiction unless a federal question appears on the face of the plaintiff's well-pleaded complaint."  *Settlement Funding, L.L.C.*, 851 F.3d at 535 (quotation omitted).  Accordingly, there is no federal question jurisdiction where "the plaintiff properly pleads only a state law cause of action."  *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011).

But even where a plaintiff pleads only state-law claims, the United States Supreme Court has recognized a "special and small category of cases in which

arising under jurisdiction still lies." *Gunn*, 568 U.S. at 258 (quotation omitted). "In *Grable*, the Supreme Court recognized that 'in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues.'" *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 588 (5th Cir. 2022) (quoting *Grable*, 545 U.S. at 312).

In "outlining the contours of this slim category" of cases, the Supreme Court inquires: "Does the 'state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities'?" *Id.* (quoting *Grable*, 545 U.S. at 314).

For a federal issue to implicate *Grable*, "it is not enough that the federal issue be significant to the particular parties in the immediate suit." *Id.* at 260. Instead, substantiality requires "importance of the issue to the federal system as a whole." *Id.*

> The Supreme Court has suggested that an issue can be important for many reasons: because state adjudication would undermine the development of a uniform body of federal law; because the case presents a nearly pure issue of law that would have applications to other federal cases; or because resolution of the issue has broad significance for the federal government. The absence of any federal cause of action is worth some consideration in the assessment of substantiality.

*Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714, 723 (5th Cir. 2017) (quotations and footnotes omitted).

In considering whether state-law claims meet *Grable*'s test, a court must consider the well-pled complaint, looking "only to what necessarily appears in the

plaintiff's statement of his own claim unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose." *Venable v. La. Workers' Comp. Corp.*, 740 F.3d 937, 942 (5th Cir. 2013) (quotation omitted). The fact that the parties may ultimately litigate a federal issue does not establish that plaintiff's cause of action arises under the Constitution or the laws of the United States, *id.*, and a party invoking *Grable* "must *still* show that the alleged federal issue arises on the face of the state court petition," *Box v. PetroTel, Inc.*, 33 F.4th 195, 202 (5th Cir. 2022) (emphasis in original).

2.    Analysis

Defendants do not deny that the face of Rayborn's Complaint sets forth only state-law causes of action, *see* Notice [1]; Mem. [12], instead contending that it necessarily raises one or more substantial federal issues based upon her state-law free speech and discrimination claims, *see* Mem. [12] at 7-9.[2]

a.    Whether Rayborn's state-law free speech claim arises under federal law

Rayborn alleges that Defendants violated her right to free speech under Article 3, Section 13 of the Mississippi Constitution.  *See* R. [1-1] at 26 (citing Miss. Const. Art. 3, § 13).    This provision states that "[t]he freedom of speech . . . shall be held sacred . . . ."  Miss. Const. Art. 3, § 13.   The Mississippi Supreme Court has indicated that this provision offers broader free speech protection than the First

---

[2] Defendants have not argued any exceptions to the well-pled complaint rule or any basis for subject-matter jurisdiction other than under *Grable*.  *See* Mem. [12].  Because Defendants bear the burden of establishing federal jurisdiction, *see Settlement Funding, L.L.C.*, 851 F.3d at 537, the Court need not and will not consider arguments that Defendants have not raised.

Amendment. *See Gulf Pub. Co. v. Lee*, 434 So. 2d 687, 696 (Miss. 1983) ("We are of the opinion, without deciding, that Article 3, Section 13 of the Mississippi Constitution by modern-day standards, appears to be more protective of the individual's right to freedom of speech than does the First Amendment since our constitution makes it worthy of religious veneration." (quotation omitted)); *see also Beavers v. City of Jackson*, 439 F. Supp. 3d 824, 829 (S.D. Miss. 2020) (citing *Gulf Pub. Co.*, 434 So. 2d at 696).

Where a state's courts rely on federal caselaw to interpret that state's constitution, the Fifth Circuit has held that this does not transform a state-law claim into a federal one. *See Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 368 (5th Cir. 1995).[3]  In light of this authority, Defendants have not shown that Rayborn has pled a federal free speech claim. *See id.*; *see also Beavers*, 439 F. Supp. 3d at 829 (holding that the plaintiff's free speech claim did not raise a federal issue, as it required an interpretation of the Mississippi Constitution, which is not coextensive with the First Amendment in all cases).

As for Defendants' *Grable* argument, they have not demonstrated that Rayborn's free speech claim lies in the "small" and "slim," special "category of cases in which arising under jurisdiction still lies." *Gunn*, 568 U.S. at 258 (quotation omitted).  Defendants cannot show substantiality under *Grable,* because Rayborn's state-law free speech claim does not present an issue of importance to "the federal system as a whole," *Gunn*, 568 U.S. at 260, nor would the state court's adjudication

---

[3]  *Carpenter* was abrogated on other grounds by *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470 (1998).

of its own constitution "undermine the development of a uniform body of federal law" or have "broad significance for the federal government," *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E.*, 850 F.3d at 723.   Nor does Rayborn's state-law free speech claim present "a nearly pure issue of law that would have applications to other federal cases."   *Id.*   Simply put, Defendants have not shown that Rayborn's free speech claims present a substantial issue of federal law.   *See id.*; *Gunn*, 568 U.S. at 260.

And even if all the other *Grable* elements were satisfied, Defendants have not demonstrated that Rayborn's state-law free speech claim is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.   This requirement concerns "the appropriate 'balance of federal and state judicial responsibilities.'"   *Id.* at 264 (quoting *Grable*, 545 U.S. at 314).   The Mississippi Supreme Court has indicated that Mississippi's constitutional free-speech provision affords broader protection than that provided by the First Amendment, *see Gulf Pub. Co.*, 434 So. 2d at 696, and "[i]t is fundamental . . . that state courts be left free and unfettered by [federal courts] in interpreting their state constitutions," *Fla. v. Powell*, 559 U.S. 50, 56 (2010).

Of note here, the Fifth Circuit has considered a complaint that alleged violations of a plaintiff's right to free speech under the Texas Constitution.   *See Carpenter*, 44 F.3d at 367.   The district court found the state constitutional claim "'essentially' a federal claim in disguise," but the Fifth Circuit reversed, holding that such a conclusion disregarded the principles of federalism, "ignore[d] the

superiority of state-court forums for state-law claims," and "denigrate[d] the state's authority to fashion independent constitutional law." *Id.*   Similar to this case, the Fifth Circuit pointed out that the Texas constitution was "broader in some respects than its federal counterpart both in wording and in substance," and as such it could not construe the Texas free speech claim as one essentially or necessarily federal in character. *Id.* at 367-68.

Turning to the argument raised in *Carpenter* that Texas courts look to First Amendment jurisprudence to analyze the state corollary, the Fifth Circuit held that "[t]he Texas courts' possible reliance on the rules and reasoning of federal constitutional case law and scholarship in no way diminishes the independence of the state right." *Id.* at 368.  "[R]egardless of its formative reliance on federal law, the Texas constitutional right to free speech is not essentially federal, and to present a Texas constitutional claim is not necessarily to present a federal claim." *Id.*  Defendants have not shown how the result should be any different in this case. *See id.*

In sum, Defendants have not shown that removal was proper on the basis of Rayborn's free speech claim under the Mississippi constitution.  *See id.*; *Settlement Funding, L.L.C.*, 851 F.3d at 537.

b.    Whether Rayborn's state-law employment discrimination claims arise under federal law

The Complaint charges that Defendants discriminated against Rayborn based upon her religion, sex, and age in violation of Mississippi Code § 25-9-149 and Mississippi Constitution Article 3, § 18.  R. [1-1] at 23.  They maintain that these

statutory employment discrimination claims turn on a construction of federal law,

specifically "the substantial federal issues that exist under Title VII and the

ADEA." Mem. [12] at 8.  Defendants further contend that Mississippi Code § 25-9-

149 is inapplicable, and that substantive Mississippi appellate decisions rely upon

Title VII and ADEA cases.  *See id.* at 8-9 (collecting cases).

> Mississippi Code § 25-9-149 provides that
>
> [i]t is the intent of the Legislature that no person seeking employment
> in state service, as defined in Section 25-9-107, Mississippi Code of 1972,
> or employed in state service, as defined in Section 25-9-107, Mississippi
> Code of 1972, shall be discriminated against on the basis of race, color,
> religion, sex, national origin, age or handicap.

Miss. Code Ann. § 25-9-149.  Section 25-9-107(b) defines "state service" as "all

employees of state departments, agencies and institutions as defined herein, except

those officers and employees excluded by this chapter."  Miss. Code Ann. § 25-9-

107(b); *see* Miss. Code Ann. § 25-9-107(c) (listing exceptions).

Defendants posit that the statute would not apply to Rayborn because she

was not a state employee, while simultaneously arguing that substantial federal

issues exist.  *See* Mem. [12] at 8-9 (Miss. Code Ann. § 25-9-149).   But in considering

whether state-law claims satisfy *Grable*, the Court must rely upon the well-pled

Complaint.  *See Venable*, 740 F.3d at 942.  Because the Complaint pleads a state-

law discrimination claim under Mississippi Code § 25-9-149, *see* R. [1-1] at 23-24,

Defendants' argument that the statute does not apply to Rayborn poses a merits

question not relevant to the threshold jurisdictional inquiry under *Grable*, *see*

*Venable*, 740 F.3d at 942.

11

To the extent Section 25-9-149 would apply to Rayborn's discrimination claims, Defendants argue that Mississippi courts rely upon Title VII and ADEA caselaw to resolve these claims, creating a substantial issue of federal law. Mem. [12] at 8-9 (collecting cases). Again, the Court is not persuaded that Mississippi courts' reliance on federal authority to interpret their own state's statutory law equates to a claim that necessarily falls within the narrow category of cases envisioned by *Grable*. *See Gunn*, 568 U.S. at 258.

Nor have Defendants shown that, to the extent there are any federal issues presented by Rayborn's state-law discrimination claims, any such federal issues meet *Grable*'s substantiality requirement. *See* Mem. [12] at 8-9; *but see Gunn*, 568 U.S. at 258-60; *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E.*, 850 F.3d at 724. Defendants cite the Mississippi Supreme Court's decisions in *Baum* and *Collins*, but neither support their arguments here. *See* Mem. [12] at 8-9 (citing *Miss. Dep't of Hum. Servs. v. Baum*, 730 So. 2d 58, 63 (Miss. 1998); *Miss. Emp. Sec. Comm'n v. Collins*, 629 So. 2d 576, 580-81 (Miss. 1993)).[4]

While *Baum* and *Collins* both considered federal law in interpreting state

---

[4] Defendants offered the same string citation of three Mississippi appellate cases in the Notice [1] of Removal and in the Memorandum [12] in opposition to Plaintiff's Motion to Remand. *See* Notice [1] at 5; Mem. [12] at 9. But the Court is unable to locate one of the three cases that Defendants cited. *See* Notice [1] at 5 (citing verbatim "*Kirk v. Mississippi Department of Public Safety*, 25 So. 3d 144, 152-156 (Miss. App. 2017)"); Mem. [12] at 9 (same). This case is not located on this page of the reporter, and it appears that Defendants provided an incorrect legal citation or that the citation contained a typographical error. The page cited includes three decisions from the Louisiana Supreme Court, each denying reconsideration of a prior action. *See Harrell v. Hall*, 25 So. 3d 144, No. 2009-CP-1873 (La. 2010); *Zeno v. La. Att'y Disciplinary Couns.*, 25 So. 3d 144, No. 2009-O-1836. (La. 2010); *Mulvihill v. Martin*, 25 So. 3d 144, No. 2009-C-1443 (La. 2010).

law, "[t]he mere fact that a state court must interpret federal law or federal regulations to determine the merits of a claim is insufficient to confer federal jurisdiction." *Biloxi Freezing & Processing, Inc. v. Mississippi Power Co.*, No. 1:16cv301-DCB-MTP, 2016 WL 6808158, at *8 (S.D. Miss. Nov. 17, 2016). "[A]lthough the parties may ultimately litigate a federal issue in their case, that fact does not 'show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution' or the laws of the United States." *Venable*, 740 F.3d at 942-43 (quoting *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). As *Grable* emphasized, "it takes more than a federal element to open the 'arising under' door." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) (quotation omitted). To demonstrate substantiality there must be an issue presented that is important to "the federal system as a whole," *Gunn*, 568 U.S. at 260, a showing which Defendants simply have not made, *see* Mem. [12],[5] and substantial significance to the parties before a particular court is not sufficient, *see Gunn*, 568 U.S. at 260. Thus, to the extent Mississippi courts may look to Title VII and the ADEA to interpret their own state's discrimination statute, Defendants have not shown that this creates a federal issue to which *Grable* applies.

 While not completely clear, it appears that perhaps Defendants are also

---

[5] Defendants fault Rayborn for not specifically addressing in her Motion [9] and Memorandum [10] the allegations concerning federal question jurisdiction raised in their Notice of Removal. *See* Mem. [12] at 9 ("So the upshot is that Mrs. Rayborn has not successfully challenged and disproven the four (4) key grounds on which federal question jurisdiction should be found to exist in this case."). But it is not Rayborn's burden to disprove jurisdiction; it is Defendants, as the removing parties, who bear the burden of establishing federal jurisdiction. *See Settlement Funding, L.L.C.*, 851 F.3d at 537.

arguing that there needs to be uniformity in the interpretation of federal laws, here Title VII and the ADEA. *See* Mem. [12] at 8-9. Plaintiff has not raised any claims under Title VII and the ADEA, and Defendants have not explained how a Mississippi state court's adjudication of a claim under that state's own discrimination statute, even if relying upon federal authorities, could possibly "undermine the development of a uniform body of federal law," or how resolution of any issue in this case "has broad significance for the federal government." *Bd. of Comm'rs of Se. La. Flood Prot. Auth.-E.*, 850 F.3d at 723.

Defendants have also not demonstrated that Rayborn's state-law discrimination claim is "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Defendants argue that "[t]here can be no disruption of the federal-state balance, since claims for . . . employment discrimination" are already being asserted in cases pending in this Court which "rest on the same alleged factual occurrences as the claims being raised in this action." Mem. [12] at 8. But the question relevant to the jurisdictional inquiry is the "federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Whether a similar claim or factual occurrence is pending in a separate case before this Court, where separate federal claims were asserted to independently vest the Court with federal jurisdiction, does not speak to the existence of subject-matter jurisdiction in this case. *Id.*[6] In short, Defendants have

---

[6] The pendency of any related cases in this Court is of no moment to the jurisdictional decision here. *See Carpenter*, 44 F.3d at 369-70. The Court must first determine whether subject-matter jurisdiction exists. *See* 28 U.S.C. § 1447(c).

not adequately addressed the fourth prong of *Grable*.  *See id.*; Mem. [12].[7]

### III.  CONCLUSION

Defendants have not carried their burden of showing any federal issue that satisfies *Grable*.  *See Gunn*, 568 U.S. at 258; *Settlement Funding, L.L.C.*, 851 F.3d at 537.  Simply put, "[t]his case cannot be squeezed into the slim category *Grable* exemplifies."  *Empire Healthchoice Assur., Inc.*, 547 U.S. at 701.  Because Defendants have not demonstrated that subject-matter jurisdiction exists and that removal was proper, Rayborn's Motion to Remand must be granted, and this matter will be remanded to state court.

**IT IS, THEREFORE, ORDERED AND ADJUDGED**, that the Motion [9] to Remand filed by Plaintiff Melissa N. Rayborn is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED**, that this civil action is remanded to the County Court of Jackson County, Mississippi, and that a certified copy of this Order of remand shall be immediately mailed by the Clerk to the clerk of the state court pursuant to 28 U.S.C. § 1447(c).

**SO ORDERED AND ADJUDGED**, this the 9th day of November, 2023.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

---

[7] To the extent there is any ambiguity as to whether *Grable* applies to permit removal even though Rayborn asserts only state-law claims, "removal based on federal question is strictly construed against removal, with doubts resolved in favor of remand in recognition of the interests of comity with state court jurisdiction."  *Port of Corpus Christi Auth. of Nueces Cnty., Tex.*, 57 F.4th at 438.